UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. |
| | ) | |
| TWO ORANGUTAN SKULLS, TWO | ) | |
| TIGER SKULLS, ONE JAGUAR SKIN, | ) | |
| AND APPROXIMATELY 108 OTHER | ) | |
| WILDLIFE PARTS INCLUDING FROM | ) | |
| ENDANGERED, THREATENED, OR | ) | |
| PROTECTED SPECIES, | ) | |
| Defendants *in Rem*. | ) | |

## **VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The United States of America, by its attorney, Joshua S. Levy, Acting United States Attorney for the District of Massachusetts, in a civil action of forfeiture, alleges, that:

### I.      NATURE OF THE ACTION

1.      This is a civil action *in rem* brought by the United States of America seeking forfeiture of all right, title, and interest in the Defendants *in Rem*, arising from the enforcement of 18 U.S.C. § 545 (smuggling goods into the United States); the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*.; regulations promulgated to enforce the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), 50 C.F.R. § 23; the Lacey Act, 16 U.S.C. § 3371 *et seq*., and the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 *et seq.*

2.      The Defendants *in Rem* were seized on or about July 2021, by the United States Department of the Interior, Fish and Wildlife Service ("USFWS").  The Defendants *in Rem* are currently in the custody of the USFWS in its facility in Massachusetts.

3.      Because this Complaint is being filed for the purpose of establishing grounds for forfeiture and providing notice to interested persons, it does not include all of the information known

by the Government in connection with the investigation underlying the claims for forfeiture set forth herein.

## II.     DEFENDANTS *IN REM*

4.     The Defendants *in Rem* were seized in Massachusetts on or about July 20, 2021 and include two orangutan skulls, two tiger skulls, one jaguar skin, and approximately 108 other wildlife parts, including from endangered, threatened, or protected species, as identified herein and listed on the attached Exhibit A (the "Defendant Properties").

## III.     JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

6.     Venue is proper under 28 U.S.C. § 1395 because the Defendant Properties are located in the District of Massachusetts and acts and omissions giving rise to the forfeiture occurred in the District of Massachusetts.

## IV.     STATUTORY FRAMEWORK

7.     The statutory framework of federal wildlife statutes is designed to prohibit commercial exploitation occurring as a result of international trade in vulnerable wildlife species.   In combination, the multiple laws and regulations set forth herein ensure that illegal trade is prohibited and ensure that any use of wildlife and plants is sustainable.  *See* 50 C.F.R. § 23.1(a)–(c).   Persons who engage in the purchase and sale of protected species and who wish to import and export any part of a species protected by the federal laws set forth below, must comply with the import and export declarations, and must truthfully identify any parcel containing any part of the protected species.

8.     The statutory framework of federal wildlife statutes is also designed to prohibit commercial exploitation occurring as a result of interstate commerce in vulnerable wildlife species. The ESA, the Lacey Act, the MMPA, and their accompanying regulations, contain prohibitions regarding the import, export, possession, transport, purchase, and sale of protected species.

9.      In addition to the specific wildlife statutes noted herein, the prohibitions against smuggling goods into the United States set forth in 18 U.S.C. § 545 apply when there is non-compliance with applicable laws and regulations requiring valid CITES documents.[1]

10.      The United States is authorized to forfeit property that has been transported, sold, imported, or exported in violation of these laws and regulations.  *See* 16 U.S.C. § 1540(e)(4)(A); 19 U.S.C. § 1595a(c); 18 U.S.C. § 545; and 16 U.S.C. § 3374.

### The Endangered Species Act (ESA)

11.      The ESA, 16 U.S.C. § 1531, *et seq.*, was enacted to provide a program for the conservation of endangered and threatened species.

12.      Under the ESA, the term "endangered species" includes any species, or part thereof, included on the Endangered Species List, which is set forth in the Code of Federal Regulations.  *See* 50 C.F.R. § 17.11, setting forth species included on the Endangered Species List.  *See also* 16 U.S.C. § 1532(8) (defining the term "fish or wildlife" as including any member of the animal kingdom, including the dead body or parts thereof), § 1532(16) (defining the term "species" as including any subspecies of fish or wildlife), § 1532(6) (defining the term "endangered species" as any species that is in danger of extinction throughout all or a significant portion of its range), and § 1533 (authorizing the Secretary of the Interior to designate a species as an endangered species based on certain factors).

13.      Under the ESA, it is unlawful for any person subject to the jurisdiction of the United States, among other things, to import any such species into the United States, 16 U.S.C. § 1538(a)(1)(A); take any such species within the United States, § 1538(a)(1)(B); possess, sell, deliver, carry, transport, or ship, by any means whatsoever, any such species taken in violation of

---

[1] The term "contrary to law" used in the criminal statute prohibiting the smuggling of goods into the United States at 18 U.S.C. § 545 has been ruled to include not only statutory law but also regulations.  In *United States v. Place*, 693 F.3d 219 (1st Cir. 2012), the First Circuit held a defendant was properly charged under the smuggling statute for violation of CITES regulations, implemented through the ESA, for the illegal trafficking of wildlife.

subparagraphs (B) and (C), § 1538(a)(1)(D); knowingly deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever, and in the course of a commercial activity, any such species, § 1538(a)(1)(E); sell or offer to sell in interstate or foreign commerce any such species, § 1538(a)(1)(F); or violate any regulation pertaining to any such species, § 1538(a)(1)(G). In addition, under 16 U.S.C. § 1538(g), it is unlawful for any person subject to the jurisdiction of the United States to attempt to commit, solicit another to commit, or cause to be committed, any offense defined in § 1538.

14.     The ESA provides that "all fish or wildlife or plants taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of this chapter, any regulation made pursuant thereto, or any permit or certificate issued hereunder shall be subject to forfeiture to the United States."   16 U.S.C. § 1540(e)(4)(A).

### The Convention on International Trade in Endangered Species of Wild Flora and Fauna (CITES)

15.     CITES, set forth at 50 C.F.R. Part 23 *et seq*., is an international agreement to provide protection to fish, wildlife, and plants that may become imperiled due to the commercial demands of international markets.  The purpose of the CITES treaty is to protect species that are, or may become, threatened with extinction by establishing import and export restrictions.

16.     In the United States, the CITES treaty is enforced through the ESA at 16 U.S.C. § 1538(c), with implementing regulations found at 50 C.F.R. Part 23.  The ESA makes it unlawful for anyone to engage in trade in any specimen contrary to CITES, possess any specimens traded contrary to CITES, and attempt to commit, solicit another to commit, or cause to be committed any activities prohibited by this treaty. 16 U.S.C. § 1538(c)(1); 50 CFR § 23.13(a),(c), and (f).  "Trade," in this context, includes importation into the United States.  *See* 50 C.F.R. § 23.5.

17.     CITES operates by creating a system of permits, called "CITES permits," to closely regulate the trade in listed species.  CITES requires each signatory country to prohibit shipments that violate CITES and to take measures to enforce CITES.  There are approximately 183 party countries to CITES, including Indonesia, which became a party to the CITES treaty on March 28, 1979, and Cameroon, which became a party to the CITES treaty on September 3, 1981.  The United States formally entered into CITES on July 1, 1975.

18.     Each party to CITES designates a Management and Scientific Authority to issue permits, make legal and scientific findings, and monitor trade.  Permits are issued only if a country's Management and Scientific Authorities determine that trade is legal and does not threaten the species' survival.  In Indonesia, the Ministry of Environment and Forestry, Directorate of Biodiversity Conservation, performs this role.  In the United States, the ESA designates the USFWS as the Management and Scientific Authority to carry out these functions of CITES implementation and permit issuance.  16 U.S.C. § 1537a.

19.     Under CITES, species are protected according to a classification system outlined in three Appendices.  These three appendices provide a sliding scale of protection, with Appendix I providing the highest level of protection.  The CITES regulations cover all living or dead animals listed in the appendices, and all parts of living or dead animals listed the appendices.

20.     The importation or exportation of an Appendix I species for any purpose —including non-commercial shipment — is authorized only in exceptional circumstances.  *See* Article III (Regulation of Trade in Specimens of Species included in Appendix I); *see also* 50 C.F.R. Part 23.  In order to trade in any species listed in Appendix I, the exporter must first obtain both a valid CITES Appendix I Export Permit from the exporting country and a valid CITES Appendix I Import Permit from the country of import.  A CITES Appendix I Export Permit can be obtained only if the CITES Scientific Authority of the exporting country has determined that trade in this specimen will not be

detrimental to the survival of the species and that the specimen was legally acquired under the domestic laws of that country.  A CITES Appendix I Import Permit can only be obtained if the CITES Scientific Authority of the importing country has determined that the trade in this specimen will not be detrimental to the survival of the species and that the imported specimen will not be used for commercial purposes.

21.     Appendix II of CITES includes species not now threatened with extinction, but which still need strict regulation to monitor their level of trade.  A CITES Import Permit is not required to be issued by the country of import for an Appendix II species.  However, a CITES Export Permit is required to be issued by the country of export to ensure that trade will not be detrimental to the survival of the species.

22.     In addition to the ESA forfeiture provisions in 16 U.S.C. § 1540(e)(4), pursuant to 19 U.S.C. § 1595a(c)(2)(B), merchandise which is introduced or attempted to be introduced into the United States contrary to law may be seized and forfeited if its importation or entry requires a license, permit or other authorization of an agency of the United States Government and the merchandise is not accompanied by such license, permit, or authorization.

### *U.S. Wildlife Import/Export Regulations*

23.     The ESA also implements the import/export regulations of the United States by authorizing the Secretary of the Interior to make regulations that are necessary and appropriate to carry out the purposes of the import/export section of the Act.  16 U.S.C. § 1538(d)(3).  These regulations are found beginning at 50 C.F.R. Part 14.

24.     Federal import/export regulations require that all imported wildlife be declared to the USFWS in the United States.  A true and complete declaration Form 3-177, Declaration for Importation or Exportation of Fish or Wildlife, must be filed at the port where clearance is requested from the USFWS at or before the time of importation.  16 U.S.C. § 1538(e); 50 C.F.R. § 14.61.  Federal

regulations also require that the USFWS clear all wildlife imported into the United States, and that the importer or his agent make available to the officer the wildlife being imported as well as all required permits, licenses, or other documents.  50 C.F.R. § 14.52.  The wildlife may only be cleared at certain ports authorized in the regulations, or by permit.  50 C.F.R. § 14.11.

25.     Federal regulations regarding the marking of containers and packages prohibit the importation of any container or package containing any fish or wildlife unless an accurate and legible list of its contents, by species scientific name and the number of each species, accompanies the shipment.  50 C.F.R. § 14.81.

26.     The forfeiture provisions of the ESA, 16 U.S.C. § 1540(e)(4), and the forfeiture provisions of 19 U.S.C. § 1595a(c)(2)(B), also apply to any wildlife parts and merchandise that is introduced or attempted to be introduced into the United States contrary to these federal regulations.

### *18 U.S.C. § 545 (Smuggling goods into the United States)*

27.     The smuggling statute, 18 U.S.C. § 545, contains two clauses: (1) whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempt to smuggle or clandestinely introduce into the United States, any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice; and (2) whoever fraudulently or knowingly imports or brings in to the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

28.     Failure to abide by the federal regulations set forth in above for wildlife imported into the United States is "contrary to law."

29.     Pursuant to 18 U.S.C. § 545, "[m]erchandise introduced into the United States in violation of this section … shall be forfeited to the United States."

### *The Marine Mammal Protection Act (MMPA)*

30.      The MMPA, 16 U.S.C. § 1361 *et seq.*, was enacted to prevent the decline of marine

mammal species and populations.  The MMPA protects all marine mammal species found in U.S.

waters, as well as marine mammals listed as endangered or threatened under the ESA worldwide.  The

MMPA defines the term "marine mammal" to mean any mammal which (A) is morphologically

adapted to the marine environment (including sea otters and members of the orders *Sirenia*, *Pinnipedia,*

and *Cetacea*), or (B) primarily inhabits the marine environment (such as the polar bear); and includes

any part of any such marine mammal, including its raw, dressed, or dyed fur or skin.  16 U.S.C.

§ 1362(6).  The regulations promulgated under this act are found at 50 C.F.R. Part 18 and 50 C.F.R.

§ 216.

31.      The MMPA regulates what can and cannot be done with live marine mammals and

with any part of a marine mammal.  The MMPA makes it unlawful for any person to transport,

purchase, sell, export, or offer to purchase, sell, or export any marine mammal for any purpose other

than public display, scientific research, or enhancing the survival of a species or stock. 16 U.S.C.

§ 1372(a)(4)(B).  The unpermitted importation of marine mammals and marine mammal products into

the United States is also prohibited.  50 C.F.R. § 18.12(a).

### *The Lacey Act*

32.      The federal wildlife protection statute known as the Lacey Act is found at 16 U.S.C.

§ 3371 *et seq.*  The Lacey Act makes it unlawful for any person to import, export, sell, receive, acquire,

or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law,

treaty, or regulation of the United States.   16 U.S.C. § 3372(a)(1).   The Lacey Act also makes it

unlawful for any person to import, export, transport, sell, receive, acquire, or purchase in interstate or

foreign commerce any fish or wildlife taken, possessed, transported, or sold in violation of any law or

regulation of any state or in violation of any foreign law. 16 U.S.C. § 3372(a)(2)(A).  The Lacey Act

defines "fish or wildlife" to include "any wild animal, whether alive or dead" and "any part, product, egg, or offspring thereof."  16 U.S.C. § 3371(a).

33.     Pursuant to 16 U.S.C. § 3374, "[a]ll fish or wildlife or plants bred, possessed, imported, exported, transported, sold, received, acquired, or purchased contrary to the provisions of section 3372 of this title (other than section 3372(b) of this title), or any regulation issued pursuant thereto, shall be subject to forfeiture to the United States."

## V.     FACTUAL ALLEGATIONS

### *The March 2021 Importation*

34.     On March 7, 2021, at the United Parcel Service ("UPS") hub in Louisville, Kentucky, a Customs and Border Protection ("CBP") officer was conducting a border inspection on a parcel arriving from Indonesia when the officer observed skulls on the x-ray display.  The parcel was inspected by the CBP officer and found to contain two hollow ceramic decorative masks.  The CBP officer broke open one of the two masks to reveal four skulls concealed inside.  After realizing that they were animal skulls, the parcel was referred to USFWS for further inspection.  A USFWS wildlife inspector identified one skull as orangutan (*Pongo* species) and the other three skulls as belonging to large cats from the *Felidae* family.  These large cat skulls were later identified as leopards.  Both orangutans and leopards (aside from certain leopard populations in Africa) are listed as Endangered under the ESA and classified under CITES Appendix I.

35.     The shipment originated in Indonesia and the intended recipient was listed as Adam BIED of Reading, Massachusetts.  The parcel description was listed as *Decorative Mask*.

36.     The USFWS maintains records of wildlife declarations and CITES permits within an online system called the Law Enforcement Management Information System (LEMIS).  A thorough search of LEMIS revealed that BIED did not file a *U.S. Fish & Wildlife Service Declaration for Importation or Exportation of Fish or Wildlife (USFWS Form 3-177)* for this skull import, which is

required by 50 C.F.R. § 14.61.  Additionally, there were no CITES permits associated with this import. The USFWS' LEMIS holds records of wildlife declarations and CITES permits dating back many years and covers the date range relevant to this investigation.

37.    The USFWS wildlife inspector used an invisible fluorescent marker to covertly mark one of the leopard skulls from the March 7, 2021 package.  The markings – an invisible, fluorescent "7" – were made on the inner left mandible and on the inner left Tympanic bulla.  These invisible fluorescent markings illuminate when examined with a black light and allow for later identification by law enforcement.  The parcel was then repackaged and allowed to continue to BIED in Reading, Massachusetts.

38.    This investigation later uncovered details regarding BIED's importation of these skulls. A review of e-mail correspondence obtained pursuant to a federal search warrant revealed BIED purchased these skulls from an individual in Indonesian for $2,600 in February 2021.  During the time frame covered by the search warrant (February 1, 2020 through May 20, 2021), BIED and his Indonesian associate maintained regular e-mail contact in which they discussed wildlife items from species endemic to Indonesia.  The e-mail communications showed BIED requested to purchase or was offered for purchase skulls, skins, claws, or teeth from species including, but not limited to, alligator, babirusa, tiger, sun bear, anoa, clouded leopard, python, orangutan, hornbills, leopard, yaki monkey, other monkeys, Sunda clouded leopard, bay cat, crab eating macaque, palm civet, giant bat, flying fox, pangolin, lizard, among other species.  The e-mails, and BIED's PayPal records, show BIED purchased at least twelve skulls from various species, including three leopard skulls, from his Indonesian associate between April 2020 and February 2021.  Based on records gathering during the investigation, as discussed *infra*, BIED made these purchases for the purpose of reselling the skulls for a profit.

39.     On March 19, 2021, a USFWS special agent located BEID's phone number as the contact number on a *www.Taxidermy.net* advertisement listing a leopard skull for sale.  The website listed the date of the advertisement as March 13, 2021, two days after UPS records show the parcel with the four smuggled skulls was delivered to BIED's residence.  This advertisement included nine pictures of a skull that closely resembled one of the large cat skulls found in BIED's March 7, 2021 shipment.

40.     On March 19, 2021, a USFWS special agent, operating in an undercover capacity, called the phone number listed on the advertisement and in a recorded conversation spoke with a man who identified himself as Adam.  During this initial contact, "Adam" claimed the leopard skull he was selling was old and that he had purchased it at an auction.  "Adam" stated leopard skulls are very rare and he was selling it for $1,750.  "Adam" informed the undercover agent that he believed the sale of this skull was legal.

41.     On May 6, 2021, the undercover agent purchased the leopard skull from BIED for $1,750 via PayPal.  BIED mailed the skull to the USFWS special agent's undercover UPS mailbox. After receiving the leopard skull, the USFWS conducted photograph analysis and confirmed this skull was one of the three large cat skulls found inside the March 7, 2021 shipment.

42.     On May 11, 2021, BIED texted the undercover agent and informed him that he had another leopard skull for sale.  BIED described it as "among the rarest of the rare" and texted photographs of the skull.  BIED texted photographs of two skulls and offered to sell them for $2,500. BIED stated that one skull was from a larger leopard and the other was a large cat of unknown species. The USFWS reviewed a photograph of this leopard skull and believed it was the same skull that had been marked with an invisible fluorescent marker on March 10, 2021.  USFWS purchased the larger leopard skull for $1,850 via PayPal on May 14, 2021.  After receiving the skull, the USFWS special agent utilized a black light and observed that this skull had fluorescent "7" markings on the cranium

and mandible, which matched the markings covertly written on the skull by the USFWS wildlife inspector on March 10, 2021.

43.     On or about May 24, 2021, a USFWS Forensic Laboratory Supervisory Forensic Scientist examined the photographs taken of the two large cat skulls purchased from BIED and stated that both skulls appeared to be from leopards (*Panthera pardus*).

### Additional Evidence Gathered During the Investigation

44.     In the course of the investigation, law enforcement also reviewed BIED's e-mail account activity between the dates of February 1, 2020 to May 20, 2021.  This review revealed BIED's correspondence with multiple U.S. and foreign contacts that discussed the buying, selling, and shipping of wildlife parts from species protected by U.S. and foreign laws.  These e-mails showed BIED bought, sold, and traded in wildlife parts and products, with knowledge that many of the transactions were in violation of U.S. laws and regulations, and knowingly failed to declare this wildlife upon importation into the United States.

45.     Law enforcement also analyzed digital evidence, including text messages, during the investigation.  The review of text messages, on various applications on BIED's smart phone, revealed that BIED communicated with foreign nationals for the purpose of gaining access to some of the most protected species on earth.  BIED purchased many wildlife parts, but particularly focused on skulls. BIED used PayPal to facilitate payment to foreign associates, received the wildlife parts in the mail after they were imported into the United States in violation of U.S. laws and regulations, and resold many of these wildlife parts to customers at a profit.  Some of BIED's skull purchases and/or sales within the United States involved the shipment of endangered species in interstate commerce.

46.     Many of the wildlife parts sought by BIED were rare wildlife species located overseas among impoverished communities.  While BIED had many foreign contacts he communicated with

solely to facilitate his wildlife part trading, BIED also sought to recruit friends living overseas to assist in the trading of wildlife parts by exploiting their financial circumstances.

47.     Digital evidence reviewed by law enforcement also showed BIED was informed by associates on numerous occasions of laws governing the trade and shipment of species he was buying and selling.  At times, BIED falsely stated how he came to possess certain skulls.  In one instance, BIED authored a letter attesting to a skull's lawful origin in order to ship that unlawfully imported skull interstate for cleaning.  The digital evidence also showed BIED was aware that he was trafficking in species that were extremely rare and that this rarity increased their value.

48.     BIED was aware the wildlife parts he purchased from his foreign suppliers were not antiques or from collectors but were killed in the wild.  When BIED's Cameroon supplier informed BIED that his hunters lacked ammunition to fulfil BIED's skull requests, BIED offered to ship the hunters ammunition.  BIED complained on numerous occasions about the bullet holes he was finding in the skulls his Cameroon supplier would ship him.

49.     BIED requested an extensive amount of wildlife parts.  For example, between January 2018 to June 2021, as shown in BIED's text messages with his wildlife supplier in Cameroon, BIED requested skulls or parts from the following species, some of which are endangered or threatened and/or listed on CITES Appendix I or II: Gorilla (CITES I, ESA Endangered), Crocodile (CITES I, ESA Threatened), Pangolin (CITES I), "Large" Chimp (CITES I, ESA Endangered), Hyrax, Monkeys (CITES II), Monitor Lizard (CITES II), Dwarf Crocodile (CITES I, ESA Endangered), Baboon (CITES II), Lion (CITES I, ESA Endangered), Leopard (CITES I, ESA Endangered), Hyena, Hippo (CITES I or II), Elephant (CITES II, ESA Threatened) and human.  Ultimately, during this period, records examined by law enforcement show that BIED purchased over 100 skulls from a variety of species from his Cameroon associate.

### *Federal search warrant executed on BIED's residence*

50.     On July 20, 2021, USFWS special agents and other law enforcement officers executed a federal search warrant on BIED's residence in Reading, Massachusetts.  During an interview with law enforcement at the time of the search, BIED stated that he sold and traded the skulls (one orangutan and three leopards) he imported from Indonesia in March 2021.  This investigation later revealed the trade involved BIED receiving a lion skull and tiger skull in exchange for his orangutan skull and leopard skull.  BIED sold the other two leopard skulls to an undercover USFWS agent. BIED also informed the special agents that he rented a storage unit at a nearby storage facility that he used to store approximately 100 wildlife parts.  BIED provided consent for law enforcement to search a vehicle and his storage unit.

51.     The search of BIED's residence, the vehicle, and his storage unit resulted in the seizure of numerous wildlife items unlawfully possessed by BIED (see *infra* ¶¶ 52, 54, 56, 58).  The wildlife parts listed under these paragraphs were seized from BIED's storage unit unless otherwise noted.

### *The Seized Wildlife Parts*

52.     The following wildlife parts are from foreign species that require a CITES permit(s) and a USFWS wildlife declaration for lawful import.  Based on its investigation and evidence that BIED regularly engaged in the unlawful importation of foreign wildlife parts, the USFWS believes BIED unlawfully imported these wildlife parts into the United States.  BIED is also required to have a USFWS import/export license to import wildlife for commercial purposes.  A query of the USFWS Law Enforcement Management Information System (LEMIS) revealed that BIED did not have a USFWS import/export license, did not declare these imports to the USFWS, and did not submit a valid CITES document(s), all requirements under ESA regulations, for any of these items:

>     a.   One orangutan (*Pongo sp*.) skull encased in wood.  Orangutans are listed as
>          Endangered under the ESA and classified under CITES Appendix I.

14

b.   One orangutan (*Pongo sp.*) skull.  Orangutans are listed as Endangered under the ESA and classified under CITES Appendix I.

c.   One tiger (*Panthera tigris*) skull.  Tigers are listed as Endangered under the ESA and are classified under CITES Appendix I.  This tiger skull was seized from BIED's residence.

d.   One leopard (*Panthera pardus*) skin.  Leopards, aside from certain Threatened populations in Africa, are listed as Endangered under the ESA.  All leopards are classified under CITES Appendix I.

e.   Three leopard (*Panthera pardus*) skulls.   Leopards, aside from certain Threatened populations in Africa, are listed as Endangered under the ESA.  All leopards are classified under CITES Appendix I.  Two leopard skulls were seized from BIED's storage unit and one from his residence.

f.   Two babirusa (*Babyrousa sp.*) skulls encased in wood.  Babirusa are listed as Endangered under the ESA and classified under CITES Appendix I.

g.   One *Mandrillus sp.* skull.  Both the mandrill and drill are listed as Endangered under the ESA and classified under CITES Appendix I.

h.   One pangolin (*Phataginus or Smutsia sp.)* skull.  Species of pangolins in this genus are protected by CITES where they are categorized under Appendix I and one species is listed under the ESA as Endangered.

i.   One South American monkey skull. All primates are Appendix II except the species included in Appendix I.   Many monkey species are listed as Endangered or Threatened under the ESA.

j.   Two duiker (*Cephalophinae spp.*) skulls.  There are several species of duiker that are Appendix II and one that is Appendix II and Endangered.

k.  Four brown bear (*Ursus arctos*) teeth.  Brown bears are protected by CITES and classified under Appendix I or II.  Several populations and subspecies are listed as Endangered or Threatened under the ESA.

l.  One brown bear (*Ursus arctos*) skull. Brown bears are protected by CITES where they are classified under Appendix I or II.  Several populations and subspecies are listed as Endangered or Threatened under the ESA.

m.  One gibbon (*Hylobatidae* family) skull.  All primates are protected by CITES and classified under Appendix I or II.  Many species are also listed as Endangered or Threatened under the ESA.

n.  Two crocodile (*Crocodylidae* family) skulls.  Most species of crocodile are protected by CITES and categorized as Appendix I or II.  Many species are also listed as Endangered or Threatened under the ESA.

o.  One piece of narwhal tusk (*Monodon monoceros*).  Narwhals are protected by the MMPA and are classified as CITES Appendix II.

p.  One South American fur seal (*Arctocephalus australis*) skull.  South American fur seals are protected by the MMPA and are classified as CITES Appendix II.

q.  One greater rhea (*Rhea americana*) skull.  Greater rheas are protected by CITES where they are classified under Appendix II.

r.  Two sting ray (unknown species) stinger bones.  Some species of sting rays from specific countries of origin are listed under CITES Appendix III.

s.  Two anoa (*Bubalus sp*.) horns.  Both species of anoa endemic to Indonesia are classified under Appendix I.

t.  One anoa (*Bubalus sp*.) skull attached to plaque.  Both species of anoa endemic to Indonesia are classified under Appendix I.

u.  One leopard tortoise (*Stifmochelys pardalis*) shell.  Leopard tortoises are protected by CITES where they are classified under Appendix II.

v.  Two springbuck (*Antidorcas marsupialis*) horns.  Springbucks are protected by CITES where they are classified under Appendix I or II.

w.  One badger (unknown species) skull.  Some species of badger are protected by CITES and classified as Appendix III.

x.  One muntjac (*Muntiacus sp.)* skull.  Some species of muntjac are protected by CITES and classified as Appendix I.

y.  One python (unknown species) skull.  Many members of the *Pythonidae* family are protected by CITES and categorized under Appendix I, II, or III.

z.  One mako shark (*Isurus sp.)* jaw.  Mako sharks are protected by CITES and are classified under Appendix II.

aa.  Four civet (unknown species) skulls.  Many species of civet are protected by CITES where they are classified under Appendix III.

bb.  One African cat (unknown species) skull.  Wild African cats are protected by CITES where they are classified as Appendix II or I.

cc.  One flying fox *(Acerodon celebensis)* skull.  Flying foxes are protected by CITES where they are classified under Appendix II.

dd.  One potto (*Perodicticus sp*.) skull.  Pottos are protected by CITES where they are classified under Appendix II.

ee.  One bear (*Ursidae* family) tooth.  All bears are protected by CITES where they are classified under Appendix I or II.

ff.  One wallaby (*Notamacropus sp*.) skull.  Some Wallaby species are protected by CITES where they are classified under Appendix I.

gg. One jackal (*Lupulella* or *Canis sp.)* skull.  One species of jackal is protected by CITES where it is classified under Appendix III.

hh. One bear (*Ursidae* family) skull.  All bears are protected by CITES where they are classified under Appendix I or II.

ii. One mountain lion (*Puma concolor*) skull.  Mountain lions are protected by CITES where they are classified under Appendix I or II.  Although mountain lions occur in the United States, the investigation showed BIED purchased this skull from an associate who had imported it from Guyana. This investigation found no records of a legal import by this associate.

jj. One Samar cobra (*Naja samarensis*) taxidermy. Samar cobras are protected by CITES and are classified under Appendix II.

kk. One walrus (*Odobenus rosmarus)* skull (no lower jaw). Walruses are protected by the MMPA and are classified as CITES Appendix III.

ll. One dhole (*Cuon alpinus*) skull. Dholes are protected by CITES and are classified under Appendix II.

53.     The above items, a. through ll. in paragraph 52, are subject to forfeiture pursuant to 16 U.S.C. § 1540(e)(4)(A), 19 U.S.C. § 1595a(c)(2)(B), 18 U.S.C. § 545, and/or 16 U.S.C. § 3374.

54.     The following wildlife items are from foreign species that require a USFWS wildlife declaration for lawful import.  The USFWS believes BIED unlawfully imported these items into the U.S. based upon evidence revealing BIED regularly engaged in the unlawful importation of foreign wildlife parts.  BIED is also required to have a USFWS import/export license to import wildlife for commercial purposes.  A query of the USFWS LEMIS revealed that BIED did not have a USFWS import/export license and did not declare these imports to the USFWS, as required under ESA regulations.

a.   Eight warthog (*Phacochoerus sp.)* tusks on a plaque.

b.   One South American sea lion (*Otaria Flavenscens*) skull.  Sea lions are protected

   by the MMPA.

c.   One raccoon dog (*Nyctereutes procyonoides*) skull.

d.   One Asian mongoose (*Herpestidae* family) skull.

e.   One mongoose (*Herpestidae* family) skull.

f.   One greater cane rat (*Thryonomys swinderianus*) skull.

g.   Four mopani worms *(Gonimbrasia belina*) dried carcasses.

h.   One queen Asian giant hornet (*Vespa mandarinia*) taxidermy.

i.   One tiger shark *(Galeocerdo cuvier)* jaw (jawbone with teeth).

j.   Four wild boar (*Sus scrofa*) teeth.

k.   One porcupine (unknown species) skull.

l.   One springbok (*Antidorcas marsupialis*) skull.

m.   One capybara (*Hydrochoerus sp.*) skull.

n.   Two harp seal *(Phoca vitulina)* skins. Harp seals are protected by the MMPA.

o.   Two white-thighed hornbill (*Ceratogymna albotibialis*) skulls.

p.   Two black-casqued hornbill (*Ceratogymna atrata*) skulls.

q.   Two yellow-casqued hornbill (*Ceratogymna elata*) skulls.

r.   One red-billed dwarf hornbill (*Lophoceros camurus*) skull.

s.   One snake rattle (*Crotalus* or *Sistrurus sp.*).

t.   One piranha (*Characidae* family) taxidermy mount.

u.    One African crested porcupine (*Hystrix cristata*) skull.

v.    One bat-eared fox (*Otocyon megalotis*) skull.

w.   One hyrax (*Dendrohyrax, Procavia,* or *Heterohyrax sp.)* skull.

55.     The above items, a. through w. in paragraph 54, are subject to forfeiture pursuant to § 1540(e)(4)(A), 19 U.S.C. § 1595aI(2)(B), 18 U.S.C. § 545, and/or 16 U.S.C. § 3374.

56.     The following wildlife items are from species protected by the ESA and are believed to have been acquired by BIED through unpermitted interstate commerce, a violation of the ESA, 50 C.F.R. § 17.21(e):

    a.  Loggerhead sea turtle (*Caretta caretta*) taxidermied mount.  Loggerhead sea turtles are listed as Endangered under the ESA and classified under CITES Appendix I. This mount was seized from a vehicle after BIED consented to its search.

    b.  Two African lion (*Panthera leo*) skulls.  Lions are listed as Threatened or Endangered (depending on subspecies) under the ESA and classified under CITES Appendix II.  One lion skull was seized from BIED's residence.

    c.  One tiger (*Panthera tigris*) skull.  Tigers are listed as Endangered under the ESA and classified under CITES Appendix I.  This skull was seized from BIED's residence.

    d.  One jaguar (*Panthera onca*) skin.  Jaguars are listed as Endangered under the ESA and classified under CITES Appendix I.  This skin was seized from BIED's residence.

    e.  One hawksbill sea turtle (*Eretmochelys imbricata*) full taxidermy mount. Hawksbill sea turtles are listed as Endangered under the ESA and classified under CITES Appendix I.

    f.  One jaguar (*Panthera onca*) skull.  Jaguars are listed as Endangered under the ESA and classified under CITES Appendix I.

    g.  One green sea turtle (*Chelonia mydas*) carapace (shell).  Green sea turtles are listed as Endangered under the ESA and classified under CITES Appendix I.

h. One polar bear (*Ursus maritimus*) skull.  Polar bears are protected by the ESA, where they are listed as Threatened, and the MMPA.  Polar bears are also classified under CITES Appendix II.

i. One leopard (*Panthera pardus*) claw.  Leopards, aside from certain Threatened populations in Africa, are listed as Endangered under the ESA.  All leopards are classified under CITES Appendix I.

57.   The above items, a. through i. in paragraph 56, are subject to forfeiture pursuant to 16 U.S.C. § 1540(e)(4)(A) and/or 16 U.S.C. § 3374.

58.   The following wildlife items are from species protected by the MMPA and are believed to have been purchased and/or offered for sale by BIED in violation of the MMPA.   16 U.S.C. § 1372(a)(4)(B).

a. Four whale (unknown species) teeth.  All whales are protected by the MMPA and many species are listed as Endangered or Threatened under the ESA.  All whales are classified as CITES Appendix II, unless classified as Appendix I.

b. One sperm whale *(Physeter macrocephalus)* tooth.  Sperm whales are protected by the MMPA and are listed as Endangered under the ESA. Sperm whales are also classified under CITES Appendix I.

c. One otter (*Lutrinae subfamily*) skeleton.  Otters are protected by the MMPA and many species are listed as Endangered or Threatened under the ESA.  Otters are also classified under CITES as Appendix I or II.

d. One piece of whale baleen.  All whales are protected by the MMPA.  Many species of the baleen whale family are classified as Appendix I or II and listed as Endangered or Threatened under the ESA.

    e.    One harp seal (*Pagophilus groenlandicus*) skull.  Harp seals are protected by the MMPA.

    f.    One grey seal (*Halichoerus grypus*) skull.  Gray seals are protected by the MMPA.

    g.    One elephant seal (*Mirounga sp.*) skull.  Elephant seals are protected by the MMPA.

    h.    One seal (*Phocini* subfamily) skull.  Seals are protected by the MMPA.

59.    The above items, a. through h. in paragraph 58, are subject to forfeiture pursuant to 16 U.S.C. § 3374.

## FIRST CLAIM FOR FORFEITURE – THE ENDANGERED SPECIES ACT

60.    The allegations contained in paragraphs 1 through 59 are incorporated herein.

61.    With respect to endangered species, the ESA makes it unlawful for any person subject to the jurisdiction of the United States to:

(A)    import any such species into, or export any such species from the United States;

(B)    take any such species within the United States or the territorial sea of the United States;

(C)    take any such species upon the high seas;

(D)    possess, sell, deliver, carry, transport, or ship, but any means whatsoever, any such species taken in violation of subparagraphs (B) and (C);

(E)    deliver, receive, carry, transport, or ship in interstate or foreign commerce, but any means whatsoever and in the course of commercial activity, any such species;

(F)    sell or offer for sale in interstate or foreign commerce any such species; or

(G)    violate any regulations pertaining to such species or to any threatened species of fish or wildlife listed pursuant to Section 1533 of this title and promulgated by the Secretary pursuant to authority provided by this chapter.

16 U.S.C. § 1538(a)(1).

62.     The ESA also makes it unlawful for any person subject to the jurisdiction of the United States to attempt to commit, solicit another to commit, or cause to be committed, any offense defined in § 1538.  16 U.S.C. § 1538(g).

63.     Orangutans, tigers, leopards, babirusa, mandrills, pangolins (one species), many monkey species, duikers (one species), bears (several species), gibbons (many species), crocodiles (some species), loggerhead sea turtles, African lions (threatened or endangered depending on subspecies), jaguars, hawksbill sea turtles, green sea turtles, polar bears, leopards (most species), sperm whales, whales (some species) are listed as Endangered under U.S. law.

64.     All wildlife taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the ESA or any regulation made pursuant thereto, or any permit or certificate issues hereunder are subject to forfeiture to the United States.  16 U.S.C. § 1540(e)(4).

65.     The Defendant Properties identified as endangered species herein are subject to forfeiture pursuant to 16 U.S.C. § 1540(e)(4) as wildlife parts (a) imported into the United States contrary to law, in that they were transported, delivered, received, shipped, or imported in violation of the ESA, 16 U.S.C. § 1538(a)(1), and federal regulations pertaining to endangered species, 50 C.F.R. Parts 17 and 23, and/or (b) delivered, received, carried, transported, shipped, sold, or offered for sale, or attempted to be delivered, received, carried, transported, shipped, sold, or offered for sale in unpermitted interstate commerce in violation of the ESA, 16 U.S.C. § 1538(a)(1), and federal regulations pertaining to endangered species, 50 C.F.R. Parts 17 and 23.

**SECOND CLAIM FOR FORFEITURE – IMPORTATION CONTRARY TO LAW**

66.     The allegations contained in paragraphs 1 through 59 are incorporated herein.

67.     Pursuant to 19 U.S.C.§ 1595a(c)(2)(B), merchandise may be seized and forfeited if its importation or entry requires a license, permit, or other authorization of an agency of the United States Government and the merchandise is not accompanied by such license, permit, or authorization.

68.     Orangutans, tigers, leopards, babirusa, mandrills, pangolins, monkeys, duikers, brown bears, gibbons, crocodiles, narwhals, walruses, South American fur seals, greater rheas, sting rays (some species), anoas, leopard tortoises, springbucks, badgers (some species), muntjac (some species), python (some members), mako sharks, civets (many species), African cats, flying foxes, pottos, piranha, bears, wallabies (some species), and jackals (one species), dholes, and samar cobras are foreign species that require a CITES permit(s) and a USFWS wildlife declaration for lawful import.

69.     A query of LEMIS revealed that the Defendant Properties identified herein as requiring a CITES permit and/or a USFWS wildlife declaration for lawful import were not declared to USFWS and/or no valid CITES document(s) were submitted.  Accordingly, these Defendant Properties are subject to forfeiture pursuant to 19 U.S.C. § 1595a(c)(2)(B).

### THIRD CLAIM FOR FORFEITURE – SMUGGLING

70.     The allegations contained in paragraphs 1 through 59 are incorporated herein.

71.     Pursuant to 18 U.S.C. § 545, it is unlawful to (1) knowingly and willfully, with intent to defraud the United States, smuggle, or clandestinely introduce or attempt to smuggle or clandestinely introduce into the United States, any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice; and (2) fraudulently or knowingly import or bring in to the United States, any merchandise contrary to law, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

72.     Failure to abide by the federal regulations for wildlife imported into the United States is "contrary to law."

73.     Pursuant to 18 U.S.C. § 545, merchandise introduced into the United States in violation of this section shall be forfeited to the United States.

74.     The Defendant Properties identified herein as endangered species and/or as requiring a CITES permit or a USFWS wildlife declaration for lawful import are subject to forfeiture as merchandise introduced into the United States in violation of 18 U.S.C. § 545.

## FOURTH CLAIM FOR FORFEITURE – THE LACEY ACT

75.     The allegations contained in paragraphs 1 through 59 are incorporated herein.

76.     Pursuant to the Lacey Act, it is unlawful for any person to import, export, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States.   16 U.S.C. § 3372(a)(1).  It is also unlawful for any person to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any state or in violation of any foreign law.  16 U.S.C. § 3372(a)(2)(A).

77.     All wildlife possessed, imported, exported, transported, sold, received, acquired, or purchased contrary to the provisions of 16 U.S.C. § 3372(a), or any regulation issued pursuant thereto, shall be subject to forfeiture to the United States.

78.     Pursuant to the MMPA, it is unlawful to transport, purchase, sell, export, or offer to purchase, sell, or export any marine mammal for any purpose other than public display, scientific research, or enhancing the survival of a species or stock.  16 U.S.C. § 1372(a)(4)(B).  The unpermitted importation of marine mammals and marine mammal products into the United States is also prohibited. 50 C.F.R. § 18.12(a).

79.     Whales, including narwhals and sperm whales, polar bears, South American fur seals, South American sea lions, harp seals, grey seals, walruses, and otters are protected under the MMPA.

80.     Orangutans, tigers, leopards, babirusa, mandrills, pangolins (one species), many monkey species, duikers (one species), bears (several species), gibbons (many species), crocodiles (some species), loggerhead sea turtles, African lions (threatened or endangered depending on subspecies), jaguars, hawksbill sea turtles, green sea turtles, leopards (most species), sperm whales, whales (some species) are listed as endangered species under U.S. law.

81.     Orangutans, tigers, leopards, babirusa, mandrills, pangolins, monkeys, duikers, brown bears, gibbons, crocodiles, narwhals, South American fur seals, walruses, greater rheas, sting rays (some species), anoas, leopard tortoises, springbucks, badgers (some species), muntjac (some species), python (some members), mako sharks, civets (many species), African cats, flying foxes, pottos, bears, wallabies (some species), dholes, samar cobras, and jackals (one species) are foreign species that require a CITES permit(s) and a USFWS wildlife declaration for lawful import.

82.     The Defendant Properties were possessed, imported, exported, transported, sold, received, acquired, or purchased contrary to the provisions of 16 U.S.C. § 3372(a), or any regulation issued pursuant thereto, and are subject to forfeiture to the United States.

WHEREFORE, the United States of America respectfully requests:

1.      That a Warrant and Monition, in the form submitted herewith, be issued to the United States Marshals Service for the District of Massachusetts, commanding it to retain custody of the Defendants *in rem* and to give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2.      That judgment of forfeiture be decreed against the Defendants *in rem*;

3.      That thereafter, the Defendants *in rem* be disposed of according to law; and

4.      For costs and all other relief to which the United States may be entitled.

Respectfully submitted,

JOSHUA S. LEVY,
Acting United States Attorney,

By:     */s/ Carol E. Head*
CAROL E. HEAD
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
carol.head@usdoj.gov

June 21, 2024

## VERIFICATION

I, James Dowd, hereby verify and declare under penalty of perjury that I am a Resident Agent in Charge with the United States Fish and Wildlife Service and, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and the statements contained therein are true to the best of my own knowledge, information and belief.

The sources of my information and the ground of my belief include the official records and files of the United States, information I obtained directly from other law enforcement officials and representatives during an investigation of alleged violations of Titles 16, 18, and 19 of the United States Code.

Executed this 20th day of June, 2024

James Dowd
Resident Agent in Charge